**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| U.S. GLOBAL CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 19-cv-02589 |
| ENERCO SP. Z O.O., ) | |
| ENERCO SP. Z O.O. SP. K., ) | Judge Jorge L. Alonso |
| PIOTR PAWL WISNIEWSKI, and ) | |
| KRYSTIAN BOGDAN STACHOWIAK ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In this diversity action, Plaintiff U.S. Global Corporation ("USG"), an Illinois corporation, brings various claims against Defendants Enerco Sp. z o.o. ("Enerco"), Enerco Sp. z o.o. Sp. K. ("Enerco SP"), Piotr Pawl Wisniewski, and Krystian Bogdan Stachowiak. Defendants now move to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), arguing this Court lacks personal jurisdiction over any of the Defendants. For the reasons that follow, defendants' motion [26] is granted in part and denied in part.

## BACKGROUND

USG is an Illinois corporation with its principal place of business in Cook County, Illinois. (*See* Compl., ECF No. 1 at ¶ 1.) USG does business in the renewable energy sector, and among other activities, USG introduces American companies to foreign companies to facilitate energy projects in foreign markets. (*Id*. at ¶ 7.) USG complains that defendants—two Polish companies and the two individuals that own those companies—wrongfully pursued certain energy projects with an American company introduced to them by USG without involving USG, allegedly in

1

violation of a contract USG had with another Polish company affiliated with defendants. (*See id.* at ¶¶ 7-37.)

Defendants Piotr Pawl Wisniewski and Krystian Bogdan Stachowiak are citizens and residents of Poland. (*Id.* at ¶ 4.) Defendant Enerco is a Polish limited liability company owned by Wisniewski and Stachowiak with its principal place of business in Poland. (*Id.* at ¶¶ 2, 9.) Defendant Enerco SP is a Polish limited partnership with its principal place of business in Poland; Enerco SP is owned by Wisniewski, Stachowiak, and Enerco. (*Id.* at ¶ 3.)

**1. Formation of the "Confidentiality and Non-Circumvention Agreement"**

Again, the thrust of USG's complaint is that defendants allegedly breached an agreement that USG entered into in February 2005 with another Polish company, EEPN Sp. z o.o. ("EEPN"), which was owned and controlled by Wisniewski and Stachowiak. (*Id.* at ¶ 10.)

Around March 2004, an agent for EEPN contacted USG's president and CEO, Romuald Poplawski, and asked if USG could help EEPN find investors for a wind project in Poland. (Pltf.'s Resp., ECF No. 30, Ex. 1 at ¶ 5.) The project would eventually come to be known as the "Tymien project." (*Id.*) According to USG, Poplawski was in Illinois when EEPN's agent contacted him, (*id.*) but defendants stress that EEPN's agent never physically traveled to Illinois, and any communications with Poplawski would have been by phone, mail or in person in Warsaw Poland. (ECF No. 35, Ex. 4 at ¶ 5.) In June 2004, EEPN's agent proposed to arrange "a call or meeting" with Wisniewski and Stachowiak" and USG. (ECF No. 30, Ex. 1 at ¶ 7.)

Thereafter, USG's Poplawski spoke with Wisniewski and Stachowiak about introducing them to potential Illinois investors, and although USG concedes its business was "not exclusively Illinois-based," USG says it was "heavily Illinois-centric" because Illinois is where most of

2

Poplawski's contacts were located, something Poplawski emphasized to Wisniewski and Stachowiak. (*Id.* at ¶ 9.)

After these initial conversations, Poplawski drafted the "Confidentiality and Non-Circumvention Agreement" ("the Agreement") between EEPN and USG. (*Id.* at ¶ 10.) Defendants contend that USG contacted EEPN in Poland specifically to discuss entering into the Agreement, and USG disputes that fact. (*See* Defs.' Memo in Support of Mot. to Dismiss, ECF No. 26, Ex. 1 at ¶ 6; *see also* ECF No. 30, Ex. 1 at ¶ 4.) Poplawski drafted and executed the Agreement in Illinois. (*Id.* at ¶ 10.) Defendant Stachowiak executed the Agreement in Poland on behalf of EEPN. (Defs.' Reply, ECF No. 35, Ex. 1 at ¶ 5.) Defendants state that EEPN conducted all of its negotiations for the Agreement in Poland and that neither defendants nor any agent of EEPN traveled to Illinois or the United States to negotiate or draft the Agreement. (*Id.*)

In relevant part, the Agreement covers the Tymien project as well as other, unspecified "potential projects in Poland." (ECF No. 35, Ex. 3, Ex. A at 1.) The Agreement states that "neither EEPN nor any of the firm's associated or affiliated companies shall take any independent action" to develop projects or conduct any transactions "with parties and/or investors introduced by USG without USG's direction and involvement" (ECF No. 1 at ¶¶ 12-13.) This clause remained in effect for two years after the Agreement was terminated. (ECF No. 35, Ex. 3, Ex. A at 2.) The Agreement also included a choice-of-law provision that stated it "shall be governed and construed in accordance with the laws of the State of Illinois, USA." (ECF No. 30, Ex. 1 at ¶ 10.)

USG and EEPN executed the agreement on February 5, 2005. Neither Defendant Enerco nor Enerco SP existed at the time. Enerco was formed on December 5, 2005, and Enerco SP was formed on January 4, 2006. (ECF No. 35, Ex. 3 at ¶¶ 5-6.) EEPN was liquidated in 2013. (ECF

3

No. 26, Ex. 1 at ¶ 5.) Defendants state—and USG does not dispute—that they terminated the Agreement by letter on June 24, 2009. (*See* ECF No. 35, Ex. 3 at ¶ 12.)

**2.    Defendants' Business Activities**

Around the same time that USG's Poplawski met Defendants Wisniewski and Stachowiak, Poplawski began looking for potential investors for the Tymien project. (ECF No. 30, Ex. 1 at ¶ 8.) Poplawski contacted Invenergy, described by USG as "an Illinois-based company engaged in renewable energy projects," and provided Invenergy with information about EEPN and the Tymien project. (*Id.*) Poplawski introduced Invenergy to Wisniewski and Stachowiak in 2005. (*Id*. at ¶ 11; *see also* ECF No. 35, Ex. 5 at ¶ 5.) The parties offer differing versions as to how the business relationship between defendants and Invenergy played out from there.

According to USG, "it was always understood [to EEPN, Invenergy, and USG] that decision-making and document drafting and review would be done from Chicago" because Invenergy would have a larger stake in the Tymien project. (*See* ECF No. 30, Ex. 1 at ¶ 12.) USG claims it helped Wisniewski and Stachowiak apply for visas to travel to Chicago for business meetings with Invenergy. (*Id*. at ¶ 14.) USG describes a number of trips Wisniewski and Stachowiak made to Chicago allegedly "in performance of the Agreement and projects developed as a result of the Agreement." (*Id*. at ¶ 16.) In March 2006, Wisniewski and Stachowiak, along with two other EEPN staffers, traveled to Chicago where they attended "substantive meetings with Invenergy" on three separate days; the meetings related to the Tymien project and other potential projects, including one that came to be known as the "Darlowo project." (*Id.*) Also, Defendants Wisniewski and Stachowiak returned to Chicago from July through August of 2006, where they attended "multiple days of meetings with high-ranking Invenergy personnel"; USG does not

4

specify what these 2006 meetings were about but states that Poplawski attended "most if not all" of them. (*Id.* at ¶ 17.)

Additionally, USG states that virtually all work for the Tymien project was performed in Illinois. Documents for the project were either drafted or approved by Invenergy in Chicago, and to the extent EEPN drafted documents, Wisniewski and Stachowiak apparently "routinely" sent such documentation to either USG or Invenergy in Illinois for review and approval. (*Id.* at ¶ 18.) Further, USG states that "all significant documents" were reviewed and edited by attorneys at the Chicago office of Baker & McKenzie. (*Id.* at ¶ 19.) USG also estimates that about "90 percent or more" of the total work performed by USG on the Tymien project was performed in Illinois, and USG claims that "a substantial majority" of the "efforts put forth by Invenergy" on the Tymien project was made by Illinois-based Invenergy personnel. (*Id.* at ¶ 20.)

Finally, specifically regarding Defendants Enerco and Enerco SP, USG claims that the defendant entities "conducted multiple other projects with Invenergy," including the Darlowo project. (*Id.* at ¶ 21.) Specifically regarding the Darlowo project, USG concedes that its involvement was marginalized by defendants and Invenergy but claims that Poplawski knows that document drafting, document review, and "all major decision-making" was performed by Invenergy in Illinois. (*Id.*)

Defendants offer a different set of facts. First, defendants assert that the only projects potentially covered by the Agreement—i.e., projects involving Invenergy and EEPN or entities affiliated with EEPN—were the Tymien project and Darlowo project. (*See* ECF No. 35, Ex. 5 at ¶ 13.)[1] With respect to Enerco and Enerco SP, defendants state that neither entity had any

---

[1] Defendants qualify this statement by clarifying that they are the only projects within the timeframe defendants argue is covered by the Agreement, i.e., between February 7, 2005 and June 24, 2011. (ECF No. 35, Ex. 5 at ¶ 13.)

5

involvement in either project. It is undisputed that EEPN—not the Enerco entities—participated in the Tymien project. Further, defendants appear to contend that the Enerco entities did not participate in the Darlowo project, but rather, two other Europe-based companies associated with Wisniewski and Stachowiak (referred to by defendants as "the Cyprus companies") formed a joint venture with Invenergy to perform the Darlowo project. (ECF No. 35, Ex. 5 at ¶¶ 9-13.) Defendants maintain that neither Enerco nor Enerco SP has ever conducted any business in Illinois. (*See* ECF No. 26, Ex. 1 at ¶ 7.)

With respect to Invenergy, defendants contend that Invenergy never performed any work in Illinois on the Tymien project or Darlowo project. Rather, defendants contend that Invenergy has several, separate European-based corporate entities, and any work performed by Invenergy on the Tymien and Darlowo projects was performed by these European-based entities (and thus, performed in Europe, not Illinois). (ECF No. 35, Ex. 5 at ¶¶ 2, 5-12, 14-15.) Defendants also state that any work performed by Baker & McKenzie attorneys relating to the projects was performed at the law firm's Warsaw office, not in Chicago. (*See id.*, Exs. 6-7.)

Finally, defendants deny that Wisniewski and Stachowiak—through EEPN or otherwise—performed any work relating to the projects in Illinois. (*Id.*, Ex. 3 at ¶ 3.) Finally, while defendants concede that Wisniewski and Stachowiak made two trips to Chicago in 2006 and met with Invenergy personnel during those trips, defendants state that they never discussed the Tymien project, the Darlowo project, or any other project covered by the Agreement during those meetings. (ECF No. 35, Ex. 3 at ¶¶ 8-9.)

In this action, USG brings three claims. USG alleges a breach of contract claim (Count I) or, in the alternative, alleges an unjust enrichment claim (Count III) against the Enerco entities.

USG also alleges a tortious interference with contract claim (Count II) against Defendants Wisniewski and Stachowiak. (ECF No. 1 at ¶¶ 22-37.)

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. *Central States v. Phencorp. Reins Co.*, 440 F.3d 870, 875 (7th Cir. 2006); Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing that personal jurisdiction exists. *N. Grain Marketing, LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). To determine whether the plaintiff has met its burden, a court may consider matters outside of the pleadings, including affidavits from both parties. *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Felland v. Clifton*, 582 F.3d 665, 672 (7th Cir. 2012). When the defendant challenges by declaration a fact alleged in the plaintiff's complaint, the plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Res. Found.*, 338 F.3d at 783. Prior to an evidentiary hearing, all factual disputes are resolved in the plaintiff's favor, but unrefuted facts in a defendant's affidavits will be taken as true. *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 (7th Cir. 2009). If a court determines material factual disputes exist in ruling on a Rule 12(b)(2) motion, a court "must hold an evidentiary hearing to resolve them…Until such a hearing takes place, the party asserting personal jurisdiction need only make out a *prima facie* case of personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

## DISCUSSION

"A federal court exercising diversity jurisdiction[2] has personal jurisdiction only where a court of the state in which it sits would have such jurisdiction." *Philos Techs., Inc. v. Philos & D,*

---

[2] The Court has subject matter jurisdiction here pursuant to 28 U.S.C. § 1332(a)(2) because USG, a citizen of Illinois, alleges that the amount in controversy exceeds $75,000 and that defendants are citizens of a

*Inc.*, 645 F.3d 851, 855 n.2 (7th Cir. 2011). Here, that state is Illinois. Illinois's long-arm statute authorizes personal jurisdiction to the extent permitted by the Illinois Constitution and the United States Constitution. 735 ILCS 5/2–209(c). "[T]here is no operative difference between these two constitutional limits," so a single constitutional inquiry will suffice. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). "The key question is therefore whether the defendants have sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo v. Dworkin*, 601 F.3d 693, 700-01 (7th Cir. 2010) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)

There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). USG concedes this Court cannot exercise general jurisdiction over defendants, so the Court need only focus on whether it has specific jurisdiction over defendants. (*See* ECF No. 30 at 8, n. 3.) Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Specific jurisdiction is appropriate where (1) a defendant has purposefully directed its activities at the forum state or purposefully availed itself of the privilege of conducting business in that state, (2) the alleged injury arises out of the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant comports with traditional notions of fair play and substantial justice. *Tamburo*, 601 F.3d at 702; *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

In making its case for specific jurisdiction, USG lumps all defendants together in discussing their contacts with Illinois, (ECF No. 30 at 10-11), but in determining whether the Court

---

foreign state who have not been lawfully admitted for permanent residence in the United States. (ECF No. 1 at ¶¶ 1-5.)

has specific jurisdiction over defendants, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984); *see also Rush v. Savchuk*, 444 U.S. 320, 331-332 (1980) (finding it "plainly unconstitutional" to aggregate all of defendants' contacts to find personal jurisdiction where one defendant had no contacts with forum state). Keeping this in mind, USG alleges one set of facts for Defendants Enerco and Enerco SP and a different set of facts for Defendants Wisniewski and Stachowiak. The Court addresses the defendants accordingly.

**I.    Defendants Enerco and Enerco SP**

The minimum contacts analysis for specific jurisdiction varies depending on the type of claim alleged. *Felland*, 682 F.3d at 674. USG alleges contract claims against the Enerco entities, and as such, the analysis must focus on the Enerco entities' "conduct during contract formation." *Id.*; *see also RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) ("[I]n a breach of contract case, it is only the dealings *between the parties in regard to the disputed contract* that are relevant to the minimum contacts analysis") (quotations omitted). A contract between a state resident and out-of-state defendant does not automatically give rise to specific jurisdiction on its own; rather, the Court looks to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining whether specific jurisdiction exists. *Burger King*, 471 U.S. at 478-79.

Here, the Court finds that facts supporting jurisdiction over the Enerco entities are lacking. Although USG spends much time discussing the details of how the Agreement at the center of its suit came to be formed, it is undisputed that the Enerco entities did not exist during this time period. (ECF No. 35, Ex. 3 at ¶¶ 5-6.) Again, the minimum contacts analysis looks to the contacts a defendant *itself* makes with the state, not contacts made by the plaintiff, another defendant, or a

9

third party. *Walden*, 571 U.S. at 284. And as defendants point out, USG makes no showing whatsoever that the acts of EEPN, Wisniewski, or Stachowiak relating to the Agreement can somehow be imputed to the Enerco entities. (ECF No. 35 at 5 n. 2.) While the Court makes no finding here whether the Enerco entities can ultimately be bound by the Agreement, it finds USG fails to show the Enerco entities engaged in any act—like initially contacting USG, negotiating the terms of the Agreement, or "contemplat[ing] future consequences" of the Agreement—that would support specific jurisdiction because they did not yet exist. *See Burger King*, 471 U.S. at 479; *see also Felland*, 682 F.3d at 674 (noting that on a breach-of-contract claim the jurisdictional analysis would be limited to the defendant's conduct "*during* contract formation") (emphasis added). USG puts much emphasis on the Agreement's Illinois choice-of-law provision, but its argument is ultimately unavailing. "A choice-of-law provision *can* be an indication that a defendant has purposefully availed itself of the laws of a particular state but generally is not determinative of whether personal jurisdiction exists," and the provision gets little weight here, where it would be impossible to say the Enerco entities negotiated and agreed to the provisions, as they did not exist at the time. *Int'l Precision Components Corp. v. Greenpath Recovery W., Inc.*, No. 17 C 9179, 2018 WL 1920118, at *5 (N.D. Ill. Apr. 24, 2018) (giving less weight where "the defendant did not actually negotiate the choice-of-law provision").

When all irrelevant allegations are stripped away, the only contact USG says the Enerco entities have had with Illinois is that they worked on "multiple projects" with Invenergy, which USG alleges is an Illinois-based company. (ECF No. 30, Ex. 1 at ¶¶ 8, 21.) This generalized allegation is the basis for its breach of contract and unjust enrichment claim. More specifically, USG submits an affidavit from its president and CEO, Romulad Poplawski, which claims that the Enerco entities worked with Invenergy on the "Darlowo project," as well as other, unspecified

10

projects. (*Id.* at ¶ 21.) Although Poplawski concedes USG's involvement on the Darlowo project "was marginalized by defendants and Invenergy," Poplawski claims to know that "Invenergy's involvement was much as it was on the Tymien [project], with document drafting and review done by Invenergy or on Invenergy's behalf in Illinois, and all major decision-making for the project made by Invenergy in Illinois." (*Id.*) Importantly, Poplawski comments on *only* Invenergy's involvement on *only* the Darlowo project and provides no details whatsoever on how or to what extent the Enerco entities were involved in these projects. Even accepting as true that Invenergy performed all its work on the Darlowo project in Illinois,[3] this is insufficient to make out a *prima facie* case of specific jurisdiction over the Enerco entities here. *See Ice Consultants US, Inc. v. Microvoice Applications, Inc.*, No. 04 C 0069, 2004 WL 1114748, at *2 (N.D. Ill. May 17, 2004) ("Entering into a contract with an Illinois company, even if the Illinois company performs in Illinois, is insufficient to establish specific jurisdiction over a defendant."); *see also Corus Int'l Trading Ltd. v. Eregli Demir*, 765 F. Supp. 2d 1079, 1086 (N.D. Ill. 2011) (finding no specific jurisdiction where plaintiff argued its performance under a settlement agreement occurred in Illinois where plaintiff failed to point to any Illinois-based action on the defendant's part). Thus, for the foregoing reasons, USG fails to make a *prima facie* case of personal jurisdiction over Defendants Enerco and Enerco SP, and accordingly, they must be dismissed.[4]

---

[3] Defendants offer affidavits disputing USG's account, but at this stage, prior to a hearing, the Court assumes the truth of USG's account, as it must. The Court also notes that defendants state that joint ventures were formed with Invenergy to perform the Darlowo project. While the contacts of one member of a joint venture can typically be imputed to another member, *see Wendt v. Handler, Thayer & Duggan, LLC*, 613 F. Supp. 2d 1021, 1030 (N.D. Ill. 2009), Invenergy's alleged acts in Illinois cannot be imputed to the Enerco entities because defendants also state the joint venture was formed with two non-defendant Cyprus companies, not the Enerco entities. (ECF No. 35, Ex. 5 at ¶¶ 9-13.)

[4] In its response, USG highlights certain visits allegedly made by Wisniewski and Stachowiak to Chicago in 2006. (ECF No. 30, Ex. 1 at ¶¶ 16-17.) Although the Enerco entities existed at the time of these visits, USG does not argue that Wisniewski and Stachowiak were acting as agents for the Enerco entities during these visits nor does USG otherwise explicitly argue these visits were contacts by the Enerco entities, (*id.*),

**II.     Defendants Wisniewski and Stachowiak**

Whether there is specific jurisdiction over Defendants Wisniewski and Stachowiak is a thornier issue. Ultimately, the Court finds there are material disputes of fact that require an evidentiary hearing to resolve the question.

USG brings a state law claim for tortious interference with contract and business expectancy claim against Wisniewski and Stachowiak, which as the name suggests, sounds in tort. (ECF No. 1 at ¶¶ 26-32.) For tort claims, "the inquiry focuses on whether the conduct underlying the claim was purposefully directed at the forum state." *Tamburo*, 601 F.3d at 702. To answer this question, a plaintiff generally has to show that a defendant engaged in "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id*. at 703 (citing standard articulated in *Calder*).

The parties do not explicitly follow this *Calder* framework in their briefs. It appears USG relies on the *Burger King* framework discussed above regarding contract claims and, again, generally discusses *all* contacts by *all* defendants in making its case for specific jurisdiction. (*See* ECF No. 30 at 7-11.) But again, the type of claim matters to the minimum contacts analysis, *Felland*, 682 F.3d at 674, so the Court applies the *Calder* inquiry to the facts USG puts forth.

The first and third prongs of *Calder* are easily met here. Regarding the third prong, USG alleges facts both in its complaint and response brief that show Wisniewski and Stachowiak knew USG was an Illinois corporation, which is sufficient to show they knew the effects of their acts would be felt in Illinois. *Tamburo*, 601 F.3d at 706-07. Regarding the first prong, the Seventh Circuit is still undecided whether *all* a defendant's intentional acts are relevant or whether only

---

and based on what USG presents in its response, the Court cannot draw an inference that Wisniewski and Stachowiak were acting on behalf of the Enerco entities either.

12

intentional *and* wrongful acts are relevant. *Id*. at 703; *see also Felland*, 682 F.3d at 675 n.2. Under the former approach, the clearly intentional acts of Wisniewski and Stachowiak regarding the formation of the Agreement would be considered, while under the later approach, only their alleged acts of using the Enerco entities to perform projects with Invenergy without including USG seem to be relevant. Because the parties do not use the *Calder* framework, they do not address this issue. Either way, USG alleges intentional and tortious acts that satisfy this first prong of the *Calder* test, but based on the circumstances of this case, the Court thinks the broader view is more appropriate and considers Wisniewski's and Stachowiak's acts in forming the Agreement. In so doing, the Court notes that *Calder* and its progeny consider the nature of the specific tort at issue. *Calder*, 465 U.S. at 788-89; *Walden v. Fiore*, 571 U.S. at 287 (discussing impact of publication element of libel tort on the strength of defendant's connection in *Calder*). To prevail on its tortious interference claim under Illinois law, USG would ultimately have to prove a valid contract existed and that Wisniewski and Stachowiak knew about the contract, *Webb v. Frawley*, 906 F.3d 569, 577 (7th Cir. 2018), so it seems that their intentional acts regarding the formation of the Agreement, even if not wrongful, are highly relevant and should be considered.

The Court finds a dispute of material fact exists regarding the second prong, i.e., whether Wisniewski and Stachowiak's acts were expressly aimed at Illinois. USG alleges that Wisniewski and Stachowiak induced the Enerco entities to breach the Agreement by partnering with Invenergy to perform multiple projects, including the Darlowo project, without USG's involvement. Critically, according to the affidavit submitted by USG's Poplawski, Invenergy is an Illinois-based company that performed its work on the Darlowo project in Illinois, and Wisniewski and Stachowiak allegedly met with Invenergy in Illinois to discuss the Darlowo project and the other, subsequent projects. (ECF No. 30, Ex. 1 at ¶¶ 11, 16, 21.) On the other hand, defendants offer

13

affidavits showing that neither Invenergy nor its lawyers ever performed any work in Illinois and that all work performed by Invenergy on the projects at issue were actually performed by European-based Invenergy entities. (*See* ECF No. 35, Ex. 5 at ¶¶ 2, 5-12, 14-15; *see also id.*, Exs. 6-7.) Defendants also state that, while they attended meetings with Invenergy in Chicago, no business was ever discussed. (ECF No. 35, Ex. 3 at ¶¶ 8-9.) Further, regarding the formation of the Agreement, disputes of fact exist between which party first contacted the other specifically about forming the Agreement as well as to what extent the parties understood business between them would be focused in Illinois. (*See* ECF No. 26, Ex. 1 at ¶ 6; *see also* ECF No. 30, Ex. 1 at ¶ 4, 9-12.)

The Court finds these disputes of fact material to whether Defendants Wisniewski and Stachowiak purposefully directed their activities at the forum state in a way that sufficiently establishes the requisite minimum contacts. If USG's version of events is true, it tends to show that Wisniewski and Stachowiak "expressly aimed" their conduct at Illinois by forming an Agreement with an Illinois company and then causing the Enerco entities to reach back into Illinois to continue working with other Illinois companies introduced to them by USG, in violation of the Agreement. *See Ariel Invs., LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 523 (7th Cir. 2018) (finding plaintiff failed to make such a showing under *Calder* and stressing that the third-party clients the defendant allegedly wrongfully engaged in business with were not located in Illinois). If defendants' version of events is true, USG really only alleges that Wisniewski and Stachowiak intentionally worked to cut out USG from projects with non-Illinois third parties, i.e., European-based Invenergy entities. Under this version of facts, Wisniewski and Stachowiak may be said to have "expressly aimed" their tortious acts at USG, which is located in Illinois, but that is insufficient to establish the requisite minimum contacts. *See id.* at 522 (explaining that *Walden*

14

requires more because "the plaintiff cannot be the only link between the defendant and the forum"); *see also Monco v. Zoltek Corp.*, 342 F. Supp. 3d 829, 836 (N.D. Ill. 2018); *Green Light Nat'l, LLC v. Kent*, No. 17-cv-6370, 2018 WL 4384298, at *4 (N.D. Ill. Sept. 14, 2018). In its reply brief, defendants request an evidentiary hearing to resolve these factual disputes if the Court deemed it necessary. (ECF No. 35 at 9 n.4.) For the foregoing reasons, the Court believes an evidentiary hearing is necessary. *Hyatt Int'l Corp.*, 302 F.3d at 713.

Additionally, the parties may note that the Court gave no consideration to USG's alleged facts pertaining to the performance of the Tymien project, most notably Wisniewski's and Stachowiak's alleged communications and work product sent to Invenergy or USG in Illinois. (ECF No. 30, Ex. 1 at ¶ 18.) The Court does not consider these contacts because USG fails to show how its claim against Wisniewski and Stachowiak "arise out of" or "relate to" these contacts. The Supreme Court has not yet explained the scope of the "arising out of" requirement, and various circuits have adopted competing approaches based on causation, some requiring proximate causation and others requiring but-for causation. *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 430 (7th Cir. 2010) (citing *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998) (requiring proximate causation) and *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1051 n.7 (9th Cir. 1997) (requiring but-for causation)). Finding the former approach underinclusive and the latter approach overinclusive, the Seventh Circuit adopted instead the Third Circuit's approach, which rejects any "mechanical test" based on causation for a more flexible inquiry "focused on the 'tacit quid pro quo that makes litigation in the forum reasonably foreseeable.'" *Id*. (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 322 (3d Cir. 2007)). This "quid pro quo" is the fundamental principle underlying the minimum contacts framework that "out-of-state residents may avail themselves of the benefits and protections of doing business in a

forum state, but they do so in exchange for submitting to jurisdiction in that state for claims arising from or relating to those activities." *Id.* Accordingly, the "precise causal relationship between contacts and claim" is "not important"; what matters is "that the relationship be 'intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable'" in the forum state. *Id.* (quoting *O'Connor*, 496 F.3d at 323).

Under this approach, all contacts relating to the Tymien project are irrelevant because nothing Wisniewski or Stachowiak did on Tymien would lead them to believe they would be haled into court in Illinois; indeed, these contacts would not even be relevant under an overinclusive "but-for" test. The alleged contacts relating to the Darlowo and other subsequent projects clearly are relevant. The facts regarding Wisniewski's and Stachowiak's involvement in forming the Agreement presents a closer call, but the Court finds USG's claim for tortious interference does arise out of these contacts. *See e.g., Kraft Chem. Co. v. Salicylates & Chems. Private Ltd.*, 149 F. Supp. 3d 897, 903 (N.D. Ill. 2015) (considering circumstances surrounding contract between plaintiff and defendant where plaintiff's tortious interference claim was related to the breach of that agreement). Finally, given the Court's conclusion that an evidentiary hearing is necessary, the Court need not consider at this time the Supreme Court's additional factors for assessing whether exercising personal jurisdiction would offend "traditional notions of fair play and substantial justice." *uBID*, 623 F.3d at 432-33.[5]

---

[5] In moving for dismissal, defendants also argue rather conclusorily that USG can only point to contacts made by Defendants Wisniewski and Stachowiak that fall outside the applicable five-year statute of limitations for its tortious interference claim, and citing two district court decisions outside the Seventh Circuit, defendants argue specific jurisdiction cannot be premised on these untimely contacts. (ECF No. 35 at 12-13.) Even assuming that USG's tortious interference claim is ultimately barred on these grounds, "jurisdiction and liability are two separate inquiries," *Goldfarb Corp.*, 565 F.3d at 1023 (quotations and citations omitted), and defendants fail to show that statute of limitations prohibits finding specific jurisdiction here.

## **CONCLUSION**

Based on the foregoing, the Court grants defendants' motion with respect to Defendants Enerco Sp. z o.o. and Enerco Sp. z o.o. Sp. K. The Enerco entities are dismissed without prejudice. For the time being, the Court denies defendants' motion with respect to Defendants Piotr Pawl Wisniewski, and Krystian Bogdan Stachowiak with leave to refile following an evidentiary hearing. The Court sets a status hearing for August 14, 2020 at 9:30 a.m. to discuss matters relating to the scope and scheduling of an evidentiary hearing to resolve the material disputes of fact outlined above.

**SO ORDERED.**  ENTERED: July 23, 2020

_____
**HON. JORGE ALONSO
United States District Judge**